FILED
10/09/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 2, 2019

**IN RE CONSERVATORSHIP OF ANNETTE H. CROSS**

**Appeal from the Probate Court for Shelby County
No. C-2645   Karen D. Webster, Judge**

_____

**No. W2018-01179-COA-R3-CV**
_____

The trial court entered summary judgment in favor of Appellees in this long and storied family dispute over the conveyance of real property held in a testamentary trust. The trial court also awarded Appellees' attorneys' fees. We affirm both the award of summary judgment and the award of attorneys' fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed and Remanded.**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which JOHN W. MCCLARTY, J., joined. RICHARD H. DINKINS, J., not participating.

Andre C. Wharton, Memphis, Tennessee, for the appellant, Estate of Barbara Pinson.

Allan J. Wade and Brandy S. Parrish, Memphis, Tennessee, for the appellee, Teresa Gibbs.

Richard S. Townley, Memphis, Tennessee, for the appellee, Cleveland Gibbs.

**OPINION**

### I.   BACKGROUND FACTS & PROCEDURAL HISTORY

This appeal is the latest chapter in a contentious family battle over a 3.43-acre tract of real property at the intersection of Berryhill Road and Highway 64 in Cordova, Tennessee, ("the Berryhill property") which was left to a testamentary trust by the parties' mother/grandmother, Verlie Cunningham Harris ("Ms. Harris"). Those background facts and portions of the procedural history that are relevant to our disposition of the issues raised in this appeal are largely undisputed.

Ms. Harris died testate in May 1998.  She was survived by three daughters, Teresa Gibbs ("Ms. Gibbs"), Barbara Pinson ("Ms. Pinson"), and Annette Cross ("Ms. Cross"; collectively, "the sisters").  In her last will and testament, Ms. Harris devised the Berryhill property to a testamentary trust ("the Trust") for the support of Ms. Cross for her lifetime. The Trust was to terminate upon the death of Ms. Cross, and all remaining trust assets were to be distributed to any children of Ms. Cross and to Ms. Gibbs and Ms. Pinson, per stirpes. The will appointed Ms. Gibbs as both the executrix and trustee.  The terms of the Trust endowed the trustee with the "absolute and unfettered discretion" to determine whether Ms. Cross, who was under disability, needed support services or provisions from trust assets and to "amend the terms . . . in the event of changed circumstances to comply with the original intent."  The family's feud began shortly after Ms. Harris's death.

When Ms. Harris died, Ms. Cross and Ms. Pinson were residing with her in the family home on the Berryhill property.  Ms. Gibbs and her family resided next door.  Ms. Pinson and Ms. Cross continued to reside in the family home.  A conservatorship was established for Ms. Cross in October 2000.  Ms. Pinson's daughter, Denise Pinson ("Denise"),[1] and Ms. Gibbs' son, Cleveland Gibbs ("Cleveland"), were appointed co-conservators.  Denise moved into the home sometime in 2000.

Difficulties stemming from the conservatorship arose soon thereafter.  In June 2001, Ms. Cross's court-appointed Guardian ad Litem ("GAL") reported that Ms. Cross protested the appointment of Denise as co-conservator; that Ms. Cross alleged physical abuse and deprivation of food and medicine by Denise; and that Ms. Cross had moved into Ms. Gibbs' home.  The GAL also noted that controversy had arisen over some of the expenditures made by Ms. Gibbs in her capacity as executrix, and with respect to whether those funds should be reimbursed to the Trust.  The GAL reported, however, that Ms. Gibbs had cared for Ms. Harris and Ms. Cross for "many years" prior to Ms. Harris's death, and that Ms. Gibbs had paid for the maintenance of Ms. Harris's property as well as for property inherited by the three sisters following their father's death.  The GAL noted that Ms. Cross was unable to assist in these responsibilities, and that Ms. Pinson "simply ha[d] not done so."  She also reported that Ms. Gibbs was caring for Ms. Cross without the use and benefit of financial assistance, that Ms. Cross was covered by Medicare but not TennCare, and that coverage was insufficient to meet Ms. Cross's medical needs.

In July 2001, the Shelby County Probate Court appointed Tyrone Paylor, Esq. ("Mr. Paylor"), to act as Ms. Cross's independent conservator only with respect to the potential sale of the undeveloped property on Mt. Pisgah Road ("the Mt. Pisgah property") that passed to the sisters upon their mother's death.  In November 2001, Mr. Paylor was appointed conservator of the estate, or property, of Ms. Cross, and Ms. Gibbs was

---

[1] Because a number of individuals share the last names Gibbs and Pinson, we will refer to Denise Pinson and Cleveland Gibbs by their first names.  We intend no disrespect.

appointed conservator of her person. The Mt. Pisgah property was valued at approximately $1,000,000, and the GAL reported that the Berryhill property "ha[d] a conservative value of $89,900" according to the records of the Shelby County Assessor of Property. The guardian observed, however, that no recent appraisal had been done and that "the property [was] sitting in a hot area that [was] being aggressively developed and may be worth a lot more than is stated." A September 2001 appraisal of the property estimated the market value of the property to be in excess of $2.2 million assuming that it was re-zoned from residential to commercial and further assuming that appropriate work was done to bring it to road grade. The Berryhill property was listed for sale, but did not sell before Ms. Harris's estate was closed, and the property transferred to the Trust in 2004.

In the meantime, after protracted contention between and amongst the parties with respect to both tracts of real property, the Trust, and the care and support of Ms. Cross, Ms. Gibbs filed a complaint for the sale and partition of the Mt. Pisgah property in April 2003. The Mt. Pisgah property was finally sold in January 2004 for $1.3 million, and the assets were distributed among the sisters. In June 2004, the Shelby County Assessor of Property appraised the market value of the Berryhill property at $101,900. In November 2005, Ms. Gibbs sold the Berryhill property to her son, Cleveland, for $78,000, but Ms. Pinson and Denise continued to reside in the property. In July 2008, Robert T. Condo ("Mr. Condo") was appointed conservator of the estate of Ms. Cross.[2]

In May 2009, Cleveland filed a detainer warrant against Ms. Pinson and Denise (collectively, "the Pinsons") in the Shelby County General Sessions Court. On August 17, 2009, Mr. Condo filed a petition in the probate court to compel a trust accounting, set aside the deed conveying the Berryhill property, remove the trustee, and for damages arising from breach of fiduciary duty. On August 28, the Pinsons, acting through counsel, moved the general sessions court to remove the detainer matter to probate court. The general sessions court denied the motion and entered judgment in favor of Cleveland Gibbs the same day. The Pinsons appealed the matter to the Shelby County Circuit Court, and Cleveland amended his complaint to include a claim for damages. In June 2010, the circuit court entered final judgment in favor of Cleveland for a writ of possession and damages in the amount of $38,815.81. That judgment was not appealed, and Cleveland filed a garnishment against funds generated by the sale of the Mt. Pisgah property held by the probate court for Ms. Pinson's benefit.

After receiving the levy from the circuit court, in August 2010 the probate court entered an order of reference to the special master to determine whether Ms. Pinson was alive and whether she was disabled. In its order, the probate court noted that it had been holding monies from the sale of the Mt. Pisgah property for Ms. Pinson's benefit since 2004 and that Ms. Pinson had not responded to correspondence. Following reports of the special master and GAL, in December 2010 the probate court appointed Ruby R. Wharton

---

[2] Ms. Gibbs continued to serve as conservator of the person of Ms. Cross.

("Ms. Wharton") as conservator of the Estate of Ms. Pinson and George Pinson, II, as conservator of her person.  The probate court authorized Ms. Wharton to take appropriate action with respect to the Berryhill property and to take actions necessary to address the levy on funds held by the court.  The probate court noted that it was unknown whether funds from the sale of the Berryhill property had in fact been paid. In February 2011, the probate court determined that the sale of the Berryhill property should be "reviewed closely" and entered an order allowing Ms. Wharton to hire legal counsel.

In April 2011, Ms. Wharton, acting as conservator of Ms. Pinson, filed a motion pursuant to Rule 60 of the Tennessee Rules of Civil Procedure to set aside the June 2010 judgment of the circuit court awarding damages to Cleveland.  In her motion, Ms. Wharton asserted that the 2005 conveyance to Cleveland took place without court approval and without notice to Ms. Pinson; that a petition to set aside the deed was pending in the probate court prior to entry of the general sessions court's judgment; and that Ms. Pinson was under a disability and did not make an appearance in the matter.  As far as we can ascertain from the record transmitted to us on appeal, the Rule 60 motion has not been adjudicated by the circuit court.

In October 2011, the probate court entered an order allowing the Conservatorship of Barbara Pinson to intervene in the pending August 2009 petition to set aside the deed filed by Mr. Condo as conservator of the estate of Ms. Cross.  In January 2012, Ms. Wharton, acting as conservator of the Estate of Ms. Pinson, filed a cross-petition against Ms. Gibbs and Cleveland to compel accounting and set aside the deed.  In her petition, Ms. Wharton asserted that Ms. Gibbs had breached her fiduciary duty by selling the Berryhill property "in a bargain sale to her son, Cleveland Gibbs[,]" and prayed for the deed to be set aside.

While the matter was pending in the probate court, Ms. Cross died on February 12, 2012, and Ms. Pinson died on October 13, 2012.  On February 23, 2012, Ms. Wharton filed a motion to substitute the Estate of Annette Cross for the Conservatorship of Annette Cross in the pending proceeding.  Ms. Wharton and George Pinson, II, were appointed administrators of Ms. Pinson's estate in March 2013.  The 2009 petition filed by Mr. Condo had not been adjudicated by the trial court, and this matter proceeded on the January 2012 cross-petition filed by Ms. Wharton.

The probate court entered a scheduling order in August 2017.[3]  In December 2017, Ms. Gibbs filed a motion for summary judgment based on the statute of limitations contained at Tennessee Code Annotated section 35-15-1005, and Cleveland filed a motion for summary judgment asserting the doctrine of *res judicata*.  Ms. Pinson's estate filed responses in opposition in January 2018.  Following a hearing on February 16, 2018, the

---

[3] From the record before us, it is unclear what events transpired between March 2013 and August 2017.

- 4 -

probate court awarded Ms. Gibbs summary judgment based on the expiration of the statute of limitations, awarded Cleveland summary judgment based on the doctrine of *res judicata*, and assessed attorneys' fees and costs against the Estate of Barbara Pinson. The probate court's order that granted summary judgment stated "[t]hat the Estate shall pay all attorney's fees, the amounts of which shall be determined at a subsequent hearing by this Court, if necessary." Finding no just reason for delay, the trial court made the judgment final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. The Estate of Barbara Pinson timely appealed.

After the Estate of Barbara Pinson appealed, this Court determined that the probate court's judgment was not final because it did not determine the amount of attorneys' fees that would be assessed against the Estate of Barbara Pinson. Rather than dismiss the entire appeal, this Court allowed the parties an opportunity to obtain a final judgment from the probate court on the issue of attorneys' fees. Thereafter, Cleveland submitted a motion for attorney fees for work expended at the summary judgment phase. In support of this motion, he also filed an affidavit from his attorney, Richard S. Townley. Ms. Gibbs also motioned the court to award her attorneys' fees for the summary judgment proceedings. In support of her request for attorney's fees, Ms. Gibbs submitted an affidavit from her counsel, Allan J. Wade, and a declaration from an independent attorney, Robert L.J. Spence, Jr., that attested to the reasonableness of Mr. Wade's fees.[4] The Estate of Barbara Pinson objected to the requests for attorneys' fees, but it did not contest the reasonableness of the amounts requested.

On June 17, 2020, the probate court held a telephonic hearing on the issue of attorneys' fees. In a written order entered on June 25, 2020, the probate court awarded attorneys' fees to Ms. Gibbs and Cleveland under Tennessee Code Annotated section 35-15-1004(a). The court applied the factors listed in Tennessee Rule of Professional Conduct 1.5—as interpreted by *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176-77 (Tenn. 2010)—and determined the fees requested were reasonable, necessary, equitable, and properly supported. Assessing the fees against the Estate of Barbara Pinson, the court awarded Ms. Gibbs $28,115 and Cleveland $1,950.

Now that the trial court has determined the issue of attorneys' fees, the case is properly before this Court.

## II. ISSUES PRESENTED

In its principal brief, the Estate of Barbara Pinson (hereinafter, "Appellant") raised

---

[4] The probate court did not receive the Affidavit of Allan J. Wade and the Declaration of Robert L.J. Spence, Jr. until after the hearing on the issue of attorneys' fees. However, the court received and reviewed the materials before entering the final written order on the issue.

the following issues for our review:[5]

1. Whether the final judgment granting appellees' motions for summary judgment was proper when the applicable statute, T.C.A. § 35-15-1005, given the evidence in the record, does not support the trial court's finding on summary judgment that a one-year statutory limit applies; and

2. Whether the trial court erred and misapplied the doctrine of res judicata since allegations of fraud were present and the final judgment from Shelby County Circuit Court, as appealed from Shelby County General Sessions civil court, did not address the same issues or parties as raised in and before Shelby County Probate Court.

In its supplemental brief, Appellant raises an additional issue:

1. Whether the trial court erred in granting attorney's fees when the appellees failed to offer sufficient proof that justice and equity warranted the granting of fees when no proof was offered showing that the trustee's actions or omissions at issue inured to the benefit of the trust or its beneficiaries.

Ms. Gibbs raises the additional issue of whether this Court has subject matter jurisdiction over this appeal.

### III.    STANDARD OF REVIEW

Our review of a trial court's disposition of a motion for summary judgment is *de novo* upon the record, with no presumption of correctness. *Kershaw v. Levy*, 583 S.W.3d 544, 547 (Tenn. 2019). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party that moves for summary judgment does not bear the burden of proof at trial, it "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015) (emphasis in original). The party opposing a properly supported motion for summary judgment "'may not rest upon the mere allegations or denials of [its] pleading,' but must respond, and by

---

[5] Appellant raised an additional issue regarding attorneys' fees in her principal brief, which was rendered moot by our Order to Obtain Final Judgment filed on April 28, 2020. Following entry of a final judgment by the trial court, Appellant raised the issue of fees again in her supplemental filing.

- 6 -

affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' *at the summary judgment stage* 'showing that there is a genuine issue for trial.'" *Id*. at 265 (quoting Tenn. R. Civ. P. 56.06). "The nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id*. (quoting *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S. Ct. 1348 (1986)). Rather, "[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Id.*

## IV.   DISCUSSION

## A.  Subject Matter Jurisdiction

We first turn to Ms. Gibbs' assertion that this Court does not have subject matter jurisdiction to adjudicate this matter. Subject matter jurisdiction concerns a court's authority to adjudicate a matter, and an appellate court is required to consider whether it has subject matter jurisdiction regardless of whether the issue is raised by the parties. Tenn. R. App. P. 13(b); *In re Estate of Trigg*, 368 S.W.3d 483, 489 (Tenn. 2012). "A court derives subject matter jurisdiction, either explicitly or by necessary implication, from the Constitution of Tennessee or from a statute enacted by the Tennessee General Assembly or Congress. The parties cannot confer subject matter jurisdiction on a trial or appellate court by appearance, plea, consent, silence, or waiver." *Id.* (citations omitted). When determining whether it has subject matter jurisdiction over a particular case, the court must examine "(1) the nature or gravamen of the cause of action, (2) the nature of the relief being sought, and (3) the constitutional or statutory provisions relied upon by the plaintiff." *Id.* (citations omitted). These questions involve questions of law which we review *de novo*, with no presumption of correctness for any determination of the trial court. *Id.* (citations omitted).

Ms. Gibbs' argument with respect to subject matter jurisdiction, as we understand it, is that this action to set aside the sale of the real property was initiated by Ms. Wharton in her capacity as conservator of Barbara Pinson in January 2012, that the conservatorship ended when Ms. Pinson died in late 2012, and that Ms. Wharton failed to file a motion to substitute the Estate of Barbara Pinson as a party. Ms. Gibbs concludes that the conservatorship lost standing to prosecute the matter following Ms. Pinson's death. Ms. Gibbs further asserts that, even assuming the Estate of Barbara Pinson was properly substituted as a party, it is not a proper party and has no standing to prosecute this matter. She contends that Ms. Pinson's children are the only persons with standing to be substituted for the conservatorship to establish their remainder interest in the real property following Ms. Pinson's death. Ms. Gibbs asserts that, when the trial court entered final judgment in the matter and the notice of appeal was filed, the Estate of Barbara Pinson was not a party and would not have been a proper party. She asserts that the Estate of Barbara Pinson accordingly lacked standing when it filed this appeal.

We observe that Ms. Gibbs' argument is predicated on the doctrine of standing, an issue which she raises for the first time on appeal. She does not contend that this Court does not have jurisdiction over the nature of the cause of action or the nature of the relief sought. Rather, she asserts that, because the Estate lacks standing, this Court does not have subject matter jurisdiction to adjudicate the issues raised on appeal.

"[T]he issue of standing is interwoven with that of subject matter jurisdiction and becomes a jurisdictional prerequisite" only when "a statute creates a cause of action and designates who may bring an action." *Bowers v. Estate of Mounger*, 542 S.W.3d 470, 480 (Tenn. Ct. App. 2017) (citing *See In re Estate of Smallman*, 398 S.W.3d 134, 149 (Tenn. 2013). That is not the case here. Unlike subject matter jurisdiction, "standing is a judge-made doctrine used to determine whether a particular plaintiff is entitled to judicial relief." *SunTrust Bank, Nashville v. Johnson*, 46 S.W.3d 216, 222 (Tenn. Ct. App. 2000) (citations omitted). Ms. Gibbs conflates the doctrine of standing with this Court's subject matter jurisdiction to adjudicate the issues raised on appeal. Further, Ms. Gibbs failed to raise the issue of standing in the trial court, and the issue "may not be raised for the first time on appeal." *In re Estate of Smallman*, 398 S.W.3d 134, 148 (Tenn. 2013). This argument is without merit. We accordingly turn to whether the trial court erred by awarding summary judgment to Ms. Gibbs based on the statute of limitations.

## B. Statute of Limitations

### 1. Controlling Statute

Without citation to authority to support her position, Appellant asserts that the trial court erred by applying the statute of limitations provided by Tennessee Code Annotated § 35-15-1005 as amended in 2017 to this matter, rather than the version that existed when Appellant filed her petition in 2012. Thus, we turn first to which version of section 35-15-1005 is applicable to this matter. The construction of a statute, including which statutory version is applicable to a matter, is a question of law that we review *de novo*, with no presumption of correctness. *In re Harris*, No. 01A01-9901-CV-00017, 1999 WL 548521, at *1 (Tenn. Ct. App. July 29, 1999) (citing *State v. Levandowski,* 955 S.W.2d 603, 604 (Tenn.1997)).

Our supreme court has held:

[g]enerally[,] statutes are presumed to operate prospectively and not retroactively. *Woods v. TRW, Inc.*, 557 S.W.2d 274, 275 (Tenn. 1977); *Cates v. T.I.M.E., DC, Inc.*, 513 S.W.2d 508, 510 (Tenn. 1974). An exception exists, however, for statutes which are remedial or procedural in nature. Such statutes apply retrospectively, not only to causes of action arising before such acts become law, but also to all suits pending when the legislation takes effect, unless the legislature indicates a contrary intention or immediate

application would produce an unjust result. *Saylors v. Riggsbee*, 544 S.W.2d 609, 610 (Tenn. 1976).

*C.W.H. v. L.A.S.*, 538 S.W.3d 488, 497-98 (Tenn. 2017). The Court has defined "procedure" as:

> [T]he mode or proceeding by which a legal right is enforced, as distinguished from the law which gives or defines the right, and which by means of the proceeding, the court is to administer—the machinery, as distinguished from its product; . . . including pleading, process, evidence, and practice. . . . Practice [is] the form . . . for the enforcement of rights or the redress of wrongs, as distinguished from the substantive law which gives the right or denounces the wrong . . . .

*Id.* at 498 (quoting *Saylors*, 544 S.W.2d at 610) (alterations in original).

This Court has noted that "[t]he demarcation between laws that are substantive and those that are procedural is not always clear." *SunTrust Bank v. Ritter*, No. E2017-01045-COA-R3-CV, 2018 WL 674000, at *3 (Tenn. Ct. App. Feb. 1, 2018) (citing *Boswell v. RFD-TV the Theater, LLC*, 498 S.W.3d 550, 556 (Tenn. Ct. App. 2016)). Statutes of limitations, however, generally "are considered procedural matters[.]" *Id.* at *4. "[T]hey merely extinguish a party's remedy for a cause of action, not the rights giving rise to a cause of action." *Id.* Thus, the version of the statute of limitations in effect when this matter was adjudicated in 2018 was applicable to Appellant's 2012 petition. The trial court applied the correct version of the statute in this case.[6]

### 2. Tennessee Code Annotated section 35-15-1005 (2017).

We turn next to Appellant's alternate argument that the trial court erred by awarding summary judgment to Ms. Gibbs under section 35-15-1005 as amended in July 2017. The section in effect when this matter was adjudicated provided:

> (a) A beneficiary, trustee, trust advisor, or trust protector shall not commence a proceeding against a trustee, former trustee, trust advisor, or trust protector for breach of trust more than one (1) year after the earlier of:
>  (1) The date the beneficiary, trustee, trust advisor, or trust protector or a representative of the beneficiary, trustee, trust advisor, or trust protector was sent information that adequately disclosed facts indicating the existence of a potential claim for breach of trust; or
>  (2) The date the beneficiary, trustee, trust advisor, or trust protector or a

---

[6] Tennessee Code Annotated section 35-15-1005 was subsequently amended effective May 10, 2019. 2019 Pub. Acts, c. 340 § 12.

representative of the beneficiary, trustee, trust advisor, or trust protector possessed actual knowledge of facts indicating the existence of a potential claim for breach of trust.

(b) For purposes of this section, facts indicate the existence of a potential claim for breach of trust if the facts provide sufficient information to enable the beneficiary; trustee; trust advisor; trust protector; or the representative of the beneficiary, trustee, trust advisor, or trust protector to have actual knowledge of the potential claim, or have sufficient information to be presumed to know of the potential claim or to know that an additional inquiry is necessary to determine whether there is a potential claim.

(c) If subsection (a) does not apply, a judicial proceeding against a trustee, former trustee, trust advisor, or trust protector for breach of trust must be commenced within three (3) years after the first to occur of:

  (1) The removal, resignation, or death of the trustee, former trustee, trust advisor, or trust protector;

  (2) The termination of the beneficiary's interest in the trust; or

  (3) The termination of the trust.

(d) Notwithstanding subsections (a)-(c), no trustee, trust advisor, or trust protector may commence a proceeding against a trustee or a former trustee if, under subsection (a), (b), or (c), none of the beneficiaries would be entitled to commence a proceeding against a trustee or a former trustee for a breach of trust.

Tenn. Code Ann. § 35-15-1005 (2017).

Applying the language in subsection (b), Ms. Pinson had "sufficient information to be presumed to know of the potential claim or to know that an additional inquiry is necessary to determine whether there is a potential claim[]" at least by May 2009, when Cleveland filed the detainer action in general sessions court; at the latest, when her legal counsel filed a motion to remove the matter to the probate court in August 2009; and at the earliest in November 2005, when Ms. Gibbs sold the Berryhill property to Cleveland Gibbs. Appellant asserts, however, that the claim against Ms. Gibbs is not time-barred because the 2009 petition filed by Mr. Condo as conservator of Ms. Cross "set the stage," and Ms. Pinson subsequently intervened in the matter in April 2011. Appellant's argument, as we perceive it, is that because Mr. Condo's petition was timely filed, and because it relates to the same claims, Ms. Pinson's April 2011 motion allows Appellant to "step[] into the shoes of the Estate of Annette Cross and prosecute[] that claim."

As Appellant asserts in her brief, the trial court did not address the relevance of the "Condo Petition." Upon review of Appellant's response and memorandum in opposition to Ms. Gibb's motion for summary judgment and the trial court's extremely detailed memorandum opinion of May 2018, which the trial court incorporated into its final judgment, it does not appear that this "relation back" argument was asserted in the trial

- 10 -

court. Although Appellant referenced Ms. Pinson's 2011 intervention in the 2009 petition in her response to Ms. Gibbs' motion for summary judgment, Appellant relied on section 35-15-1005 as it existed prior to the 2017 amendments in support of her proposition that the 2012 petition was not time-barred. In her March 2018 supplemental memorandum in response to Ms. Gibbs and Cleveland's motions for summary judgment, Appellant asserted that the statute of limitations could not be applied retroactively and that the statute as amended in 2017 accordingly was inapplicable. Additionally, as noted above, it does not appear that an intervening petition was in fact filed in the trial court. Ms. Gibbs asserts that an intervening petition was not filed, and that Appellant's 2012 cross-petition to set aside the deed was the only petition before the court. In her reply brief, Appellant does not contend that an intervening petition was filed, but asserts that the 2012 cross-petition had the same effect.

It appears that Appellant's 2012 cross-petition was the only petition before the court when this matter was heard in February 2018. Whether that cross-petition should somehow be construed as an intervening petition was not raised as an issue in the trial court. It is well-settled that an issue cannot be raised for the first time on appeal. *Watson v. Waters*, 375 S.W.3d 282, 290 (Tenn. Ct. App. 2012). Similarly, "arguments not asserted at trial are deemed waived on appeal." *Villages of Brentwood Homeowners Ass'n, Inc. v. Westermann*, No. 01A01-9708-CH-00388, 1998 WL 289342, at *2 (Tenn. Ct. App. June 5, 1998). We accordingly deem this argument waived.

### 3. Ms. Pinson's Disability

Appellant further asserts that Ms. Pinson was operating under a disability when this matter accrued, and that the trial court erred by failing to consider that disability for the purposes of tolling the statute of limitations under Tennessee Code Annotated section 28-1-106. She contends that, although Ms. Pinson's attorney and conservator had actual notice of the transfer of the Berryhill property to Cleveland Gibbs "at various times in 2009-2010," the trial court did not address whether Ms. Pinson was operating under a disability at that time. Appellant asserts, "[c]ertain indicia should have given the court, or others, pause that something was not right with Barbara Pinson[]" in 2009.

We observe that Section 28-1-106 was amended twice since the time this action accrued, which the parties appear to agree was when the detainer action was filed in May 2009. The most recent version of the statute, effective April 27, 2016, is not applicable to this case because it applies "only to causes of action filed on or after" that date. 2016 Pub. Act. 932 § 2; *Woodruff by and through Cockrell v. Walker*, 542 S.W.3d 486, 496 n.7 (Tenn. Ct. App. 2017). The version of the section as it existed when this action accrued in 2009 provided:

> If the person entitled to commence an action is, at the time the cause of action
> accrued, either within the age of eighteen (18) years, or of unsound mind,

such person, or such person's representatives and privies, as the case may be, may commence the action, after the removal of such disability, within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years from the removal of such disability.

Tenn. Code Ann. § 28-1-106 (2009). The section as amended effective July 1, 2011, and in effect when Appellant filed her petition in 2012, provided:

If the person entitled to commence an action is, at the time the cause of action accrued, either under eighteen (18) years of age, *or adjudicated incompetent*, such person, or such person's representatives and privies, as the case may be, may commence the action, after legal rights are restored, within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years from restoration of legal rights.

Tenn. Code Ann. § 28-1-106 (2012) (emphasis added). The parties disagree with respect to whether the version as amended in 2011 or the version in effect when the action accrued in 2009 is applicable to this matter. The version of the statute as amended in 2011 required an adjudication of incompetency, while the version in effect in 2009 did not.

Appellant asserts in her reply brief that the version of the statute in effect in 2009 is applicable to this case, and that no adjudication of incompetency therefore was required to toll the limitations period. She asserts that Ms. Pinson was of unsound mind when this action accrued in 2009, and that the limitations period accordingly was tolled. Appellant cites no case law to support this assertion, however, and we find none.

It is undisputed that Ms. Pinson had not been adjudicated incompetent prior to the appointment of a conservator in December 2010. Moreover, upon review of the voluminous record in the case, we find no proof that Ms. Pinson was of "unsound mind" in November 2005, when the Berryhill property was conveyed to Cleveland Gibbs, or in 2009, when the detainer warrant was adjudicated. In her response to Ms. Gibbs' statement of undisputed facts, Appellant did not dispute that Ms. Pinson retained an attorney to represent her in the 2009 detainer action. While not conclusive, the fact that Ms. Pinson had the capacity to engage legal representation to protect her interests is some evidence of soundness of mind when this cause of action accrued. *See In re Estate of Eden*, 99 S.W.3d 82, 90 (Tenn. Ct. App. 1995) The fact that legal counsel accepted representation in the matter is additional evidence that Ms. Pinson was of sound mind in 2009. *See* Sup. Ct. Rules, rule 8, Rules of Prof. Conduct, Rule 1.14.

Whether a limitations period should be tolled under section 28-1-106 is a question of fact, and the party seeking application of the statute bears the burden of proof. *Sherrill v. Souder*, 325 S.W.3d 584, 603 (Tenn. 2010). The party opposing a motion for summary

- 12 -

judgment must "'set forth specific facts' *at the summary judgment stage* 'showing that there is a genuine issue for trial.'" *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 265 (Tenn. 2015) (quoting Tenn. R. Civ. P. 56.06). Although Appellant asserted mental incapacity several times in her response in opposition to Ms. Gibbs' motion for summary judgment, she offered no facts to demonstrate Ms. Pinson's incapacity. Additionally, the Statement of the Case included in Appellant's brief is exceedingly condensed, and refers us to no pleading or motion to indicate that she asserted the tolling statute as a defense to the limitations period or that she offered proof of incapacity during the relevant period. Accordingly, regardless of which version of the statute is applicable to this matter, Appellant failed to set-forth specific facts to demonstrate a genuine issue for trial.

In light of the foregoing, we affirm the trial court's award of summary judgment to Ms. Gibbs based on the statute of limitations set-forth in Tennessee Code Annotated section 35-15-1005.

## C. Res Judicata

We turn next to whether the trial court erred by awarding summary judgment to Cleveland based on the doctrine of *res judicata*. "The doctrine of res judicata or claim preclusion bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, *or could have been*, litigated in the former suit." *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012) (emphasis added) (citations omitted). Known as a "rule of rest," the doctrine "promotes finality in litigation, prevents inconsistent or contradictory judgments, conserves judicial resources, and protects litigants from the cost and vexation of multiple lawsuits." *Id.* A party who asserts that a claim is *res judicata* must show "(1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits." *Id.* Our supreme court has noted that, as a general rule, "a change in the law occurring after a final judgment ordinarily does not create an exception to the application of the doctrine of res judicata or claim preclusion." *Id.* at 493. Therefore, a change in the statutes following the conclusion of earlier litigation ordinarily will not "provide a basis for relitigating the same dispute." *Id.* (citing 18 James Wm. Moore et al., *Moore's Federal Practice* §§ 131.21[2], 131.22[3] (3d ed. 2009) ("18 *Moore's Federal Practice*")). The courts have recognized exceptions to this general rule only on "rare occasions[.]" *Id.* (footnote omitted). An exception may be applied "when a new statute provides an independent basis for relief which did not exist at the time of the prior action." *Id.* at 493-94 (quoting 18 *Moore's Federal Practice* § 131.22[3]). *See also State ex rel. Cihlar v. Crawford,* 39 S.W.3d 172, 178 (Tenn. Ct. App. 2000) (permitting a second lawsuit after the first lawsuit had been dismissed for lack of standing). A court may also "relax[]" application of the doctrine "in circumstances in which a party has been deprived of a fair opportunity to litigate its claim." *Id.* at 494 (citing s*ee Kremer v. Chem.*

- 13 -

*Constr. Corp.,* 456 U.S. 461, 481 n.22 (1982); 18 *Federal Practice and Procedure* § 4415, at 351, 365-66).

Appellant asserts that the doctrine of *res judicata* is not applicable in this matter because the general sessions court was not a court of competent jurisdiction, because the general sessions adjudication was not on the merits, and because the same parties were not involved in the detainer action and probate court proceedings.

Regardless of the jurisdictional constraints of the general sessions court, an appeal from general sessions court to circuit court is a *de novo* appeal. *Brown v. Roland*, 357 S.W.3d 614, 619 (Tenn. 2012); *Ware v. Meharry Med. Coll.*, 898 S.W.2d 181 (Tenn. 1995) (adopting *Ware v. Meharry Med. Coll.*, No. 01A01-9304-CV-00149, 1994 WL 108905 (Tenn. Ct. App. Mar. 30, 1994) (Koch, J., dissenting). The Tennessee Supreme Court has held:

> The Tennessee Rules of Civil Procedure favor using a single proceeding to resolve all the parties' disputes on the merits. *Karash v. Pigott,* 530 S.W.2d 775, 777 (Tenn.1975); *Quelette v. Whittemore,* 627 S.W.2d 681, 682 (Tenn.Ct.App.1981). They govern civil actions appealed to the circuit court. Tenn. R. Civ. P. 1. Giving them full effect with regard to de novo appeal from the general sessions courts will not only encourage the parties to select the most appropriate judicial forum but will also avoid multiple proceedings to resolve the parties' disputes when they can be resolved in a single proceeding.

*Ware*, 898 S.W.2d at 186 (footnote omitted).

Accordingly, notwithstanding the limitations of general sessions court, a *de novo* appeal to the circuit court "provides the parties an entirely new trial as if no other trial had occurred and as if the case had originated in the circuit court." *Id.* at 184 (quoting Lawrence A. Pivnick, *Tennessee Circuit Court Practice*, § 3-10, at 115 (3d ed. 1991)). Thus, on appeal to circuit court, the parties may add additional parties, new causes of action, and new defenses. *Id.* at 185. They also may add counterclaims, cross-claims, and third-party claims. *Id.*

This Court has had several opportunities to discuss the doctrine of *res judicata* with respect to detainer actions. In the context of a defendant's assertion of fraud to challenge foreclosure following an unlawful detainer action in general sessions court, we stated:

> The Buyers argue about the general sessions court's jurisdiction, but, as we have illustrated above, it had subject matter jurisdiction of the detainer action. It was competent in the detainer action to consider title as a challenge to the Sellers' right to possession. The Buyers understandably argue that the

- 14 -

cause of action in the present action is not the same as in the detainer action. However, the Tennessee Supreme Court has recently redefined the term "cause of action" broad[ly] enough to connect the detainer action and the present action. There can be no doubt that the detainer action and the present action both arose out of the same transaction or series of connected transactions.

*Love v. Fed. Nat'l Mortg. Ass'n*, 472 S.W.3d 272, 277-78 (Tenn. Ct. App. 2015) (quoting *Davis v Williams*, No. E2010-01139-COA-R3-CV, 2011 WL 335069, at *4 (Tenn. Ct. App. Jan. 31, 2011)).

In the present case, Appellant could have raised the defense of fraudulent conveyance in the general sessions court and on appeal to the circuit court but failed to do so. The current action to set aside the conveyance of the Berryhill property arises out of the same series of transactions as the 2009 detainer action, and Ms. Gibbs could have been added as a party on *de novo* appeal to circuit court. Finally, the same parties or their privies have been involved in this dispute for over a decade. As we noted above, in 2011 the Conservatorship of Ms. Pinson sought to intervene in the 2009 petition to set aside the conveyance filed by Mr. Condo. Ultimately, Ms. Wharton filed a cross-petition seeking similar relief in January 2012. Although Appellant asserts an absence of privity on the basis that the interests of Ms. Pinson's heirs are not identical to those of the conservatorship, we observe that the petition adjudicated in this matter was the January 2012 cross-petition filed before Ms. Pinson's death. We additionally note that Ms. Pinson's daughter was a party to the 2009 detainer action, and Ms. Pinson's son was appointed conservator of Ms. Pinson's person in 2010.

Tennessee has adopted the "transactional test . . . for determining whether two proceedings constitute the 'same cause of action' for purposes of res judicata." *Hooker v. Haslam*, 393 S.W.3d 156, 165 n.6 (Tenn. 2012). Additionally, in Tennessee, "privity as used in the context of *res judicata* does not embrace relationships between persons or entities, but rather to the subject matter of the litigation." *Phillips v. Gen. Motors Corp.*, 669 S.W.2d 665, 669 (Tenn. Ct. App. 1984). *See also In re Estate of Goza*, No. W2013-00678-COA-R3-CV, 2014 WL 7235166, at *5 (Tenn. Ct. App. Dec. 19, 2014). The 2009 detainer action and the 2012 cross-petition in probate court arose from the same transaction: the conveyance of the Berryhill property by Ms. Gibbs to Cleveland. Ms. Pinson and Appellant, her estate, have the same interest in the Berryhill property: a remainder interest under the terms of the Trust. Whether the 2005 conveyance should have been set aside could and should have been litigated in the 2009 action. Indeed, Appellant moved to remove the detainer action to probate court in order to litigate it within the context of the Trust, but failed to assert fraudulent conveyance as a defense upon *de novo* appeal in the circuit court. We affirm the trial court's award of summary judgment in favor of Cleveland based on the doctrine of *res judicata*.

- 15 -

## D. Award of Attorneys' Fees

We turn finally to whether the trial court erred by awarding attorneys' fees to Ms. Gibbs and Cleveland. Appellant argues that the award of attorneys' fees constituted an abuse of discretion because there was not sufficient proof to show that "justice and equity" required the award and because the award will not benefit the Estate of Barbara Pinson.[7] Appellant relies on this Court's holding in *In re Estate of Lipscomb* in support of her argument that, in an action involving an estate as a party, an award of attorney's fees constitutes an abuse of discretion if the award does not inure to the benefit of the estate.

It is well-settled that Tennessee follows the "American Rule" for awarding attorneys' fees. *See Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009).

> Under the American rule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case.

*Id.* (footnote and citations omitted). The Supreme Court has explained that this rule is based on a number of public policy considerations.

> First, since litigation is inherently uncertain, a party should not be penalized for merely bringing or defending a lawsuit. Second, the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included paying the fees of their opponent's lawyer. Third, requiring each party to be responsible for their own legal fees promotes settlement. Fourth, the time, expense, and difficulty inherent in litigating the appropriate amount of attorney's fees to award would add another layer to the litigation and burden the courts and the parties with ancillary proceedings. Thus, as a general principle, the American rule reflects the idea that public policy is best served by litigants bearing their own legal fees regardless of the outcome of the case.

*Id.* at 309 (quoting *House v. Estate of Edmondson,* 245 S.W.3d 372, 377 (Tenn. 2008). Appellate courts will not interfere with a permissible award of attorney's fees absent a showing of abuse of discretion. *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005). The abuse of discretion standard, however, "does not . . . immunize a lower court's decision from any meaningful appellate scrutiny." *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515,

---

[7] In its principal brief, Appellant also argued that the award of attorneys' fees was improper because the trial court erred in granting summary judgment. Because we determined summary judgment was proper, we will not address this portion of Appellant's argument.

524 (Tenn. 2010)). A trial court's "[d]iscretionary decisions must take the applicable law and the relevant facts into account." *Id.* "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Id.* (citing *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 42 (Tenn. 2005)).

Tennessee Code Annotated section 35-15-1004(a) lists a statutory exception to the "American Rule" on attorneys' fees. It states, "[i]n a judicial proceeding involving the *administration of a trust*, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." Tenn. Code Ann. § 35-15-1004(a) (emphasis added).

We begin our discussion of this issue by noting that the procedural posture of *Estate of Lipscomb* bears little resemblance to the current case. In *Lipscomb*, the administrator of the estate filed a contempt action against a beneficiary who allegedly violated the trial court's restraining order prohibiting the beneficiary from transferring or disposing of assets of the Estate. *In re Estate of Lipscomb*, No. W2016-00881-COA-R3-CV, 2018 WL 3084758, at *1 (Tenn. Ct. App. June 21, 2018). The trial court found that, under the circumstances, "it [was] fair and equitable to require the Estate to pay half of [Beneficiary's] attorney's fees." *Id.* at *2 (alterations in original). On appeal, we noted that the beneficiary's attorney's fees were incurred in defense of a contempt petition and that the trial court had ordered the beneficiary to draft an inventory in an attempt to ensure that estate property remained in the estate pending further proceedings. *Id.* at *3. We also noted that the trial court further advised the beneficiary at the hearing that all estate property would be surrendered to the control of the personal representative and that any contested items would be ruled upon at a later date. *Id.* at *3. In actions such as *Lipscomb*, "attorney fees may be awarded to someone other than the administrator of an estate when the services '*inured to the benefit of the entire estate*'" rather than "individuals claiming an interest in the estate." *Id.* at *2 (emphasis added) (quoting *Pierce v. Tharp*, 455 S.W.2d 145, 149 (Tenn. 1970)).

Appellant's reliance on *Lipscomb* is misplaced. The action in *Lipscomb* was initiated to protect assets of the estate. *See id.* at *1-2. The current case, on the other hand, is but the latest chapter in an ongoing dispute over the sale of Trust property occurring long before the decedent's death. The Trust, moreover, was not established for the decedent's benefit, the decedent's interest in the property was a remainder interest, and the petition adjudicated was filed before the decedent's death. Appellant's argument that attorneys' fees should not be awarded to Appellees because doing so would not benefit the Estate of Barbara Pinson is an improper application of the rule stated in *Lipscomb*. In *Lipscomb* and

- 17 -

similar cases where the attorney's services must have benefited the estate in order to award attorney's fees, the "estate" that attorneys' fees were assessed against was directly at issue. *See id.* at *1-2. *See also In re Conservatorship of Porter*, No. W2016-00693-COA-R3-CV, 2019 WL 1313384, at *1, *3 (Tenn. Ct. App. Mar. 21, 2019) (affirming an award of attorneys' fees in an action involving the administration of the estate); *In re Estate of Skinner*, No. M2015-00206-COA-R3-CV, 2015 WL 9699937, at *1, *3 (Tenn. Ct. App. Jan. 11, 2015) (denying an award of attorney's fees when the underlying action involved recovering the remains of the decedent); *In re Estate of Greenamyre*, 219 S.W.3d 877, 886-87 (Tenn. Ct. App. 2005) (awarding the full amount of attorneys' fees incurred at the trial court level). Unlike the estate in *Lipscomb*, the Estate of Barbara Pinson is not being administered nor are its assets at issue.

In contrast to the facts of *Lipscomb*, the underlying action in this case is a cross-petition that alleged a breach of fiduciary duty by Ms. Gibbs. The petition requested the trial court to compel trust accounting and set aside the sale of the Berryhill property to Cleveland. Ms. Pinson passed away nearly nine months after the petition was filed. At the summary judgment phase, the trial court assessed attorneys' fees against the Estate of Barbara Pinson as the opposing party in an action that involves the *administration of a trust*, not an action where an estate's assets or administration was at issue. Had it not been for the unfortunate passing of Ms. Pinson only months after the petition was filed, her estate would not be a party to this suit. The trial court ordered an award of attorneys' fees under Tennessee Code Annotated section 35-15-1004(a). Furthermore, section 35-15-1004(a) is appropriately absent from the opinion in *Lipscomb*. *See Lipscomb*, 2018 WL 3084758. Unlike the present case, *Lipscomb* did not involve the administration of a trust. Here, the foundation of Ms. Pinson filing her cross-petition was her taking issue with how Ms. Gibbs *administered the Trust* as its trustee. Therefore, we find that the rule stated in *Lipscomb* is inapplicable to this case.

On April 28, 2020, this Court entered an order that directed the parties to obtain a final judgment on the issue of attorneys' fees. Before the trial court, Ms. Gibbs and Cleveland argued that Tennessee Code Annotated section 35-15-1004(a) entitles them to attorneys' fees for the summary judgment proceedings. The trial court agreed and found the parties' requests for attorneys' fees were properly supported by the affidavit of attorney Allan J. Wade, the declaration of attorney Robert L.J. Spence, Jr., and the affidavit of Richard S. Townley, Sr. The trial court found that the affidavit of Allan J. Wade provided sufficient facts that specified the inequity of Ms. Gibbs or the Trust bearing the cost of attorneys' fees and expenses.[8] In its order on attorneys' fees, the trial court also took

---

[8] In an effort to limit the spread of COVID-19, the trial court clerk requested that the parties mail their filings rather than deliver them in-person. As a result, counsel for Ms. Gibbs mailed its filings on attorneys' fees to the clerk. The filings included the affidavit of attorney Allan J. Wade, the declaration of attorney Robert L.J. Spence, Jr., and the response to Appellant's opposition to awarding fees. These filings were not received until after the telephonic hearing on the issue. Subsequently, the trial court reviewed and considered the filings before making a final ruling on the issue. Counsel for Appellant received the filings

judicial notice of its prior orders. Specifically, the court took judicial notice of two orders that were included in Ms. Gibbs's supplemental filing. The first order was a March 2013 order that appointed an administrator of the Estate of Barbara Pinson. In the March 2013 order, the court valued the Estate of Barbara Pinson at $400,000. This order was included in the record in the original summary judgment proceedings. The second order, dated September 19, 2019, confirmed an annual accounting of the Estate of Barbara Pinson, which valued the estate at $345,267.74. After considering the filings of Ms. Gibbs and Cleveland, the trial court awarded Ms. Gibbs attorney fees in the amount of $28,115 and attorney fees to Cleveland in the amount of $1,950.

From our review of the record, we agree with the trial court's finding that the attorney fees and expenses of Ms. Gibbs and Cleveland are reasonable, necessary, and properly supported. The affidavit of Allan J. Wade addressed several of the factors listed in Tennessee Rule of Professional Conduct 1.5, as interpreted by *Wright ex rel. Wright*, 337 S.W.3d at 176-77. In particular, the affidavit stated that Mr. Wade has considerable experience practicing law; that the case involved unique questions of law; that the gravamen of the dispute was over the Berryhill Property, which is valued at over $2.24 million; and that based on the significant procedural history in this case, Mr. Wade was required to expend considerable time prosecuting the motion for summary judgment. The declaration of Robert L.J. Spence, Jr. addressed many of the same factors and concluded that Mr. Wade's fees and expenses were reasonable. In regards to Cleveland's attorneys' fees, his request is properly supported by the affidavit of Richard S. Townley. Mr. Townley's affidavit details his experience and the work he performed in this case. Aside from the parties' filings, the trial court independently considered many of the factors listed in Rule of Processional Conduct 1.5. The trial court specifically found that the summary judgment proceedings required significant time and expense from the attorneys, that the issues were hotly contested, and that the attorneys are experienced and reputable. We agree with the trial court that the requested fees and expenses are reasonable, necessary, and properly supported.

Tennessee Code Annotated section 35-15-1004(a) permits an award of attorneys' fees in cases that involve the administration of a trust, "as justice and equity may require." "The determination of whether an award of attorney's fees is warranted under section 35-15-1004(a) lies within the sound discretion of the trial court." *In re Estate of Goza*, 397 S.W.3d 564, 571 (Tenn. Ct. App. 2012) (citing *Morrow v. SunTrust Bank*, No. W2010-01547-COA-R3-CV, 2011 WL 334507, at *8 (Tenn. Ct. App. Jan. 31, 2011)). This Court has awarded defendants attorneys' fees under section 35-15-1004(a) in previous cases where a plaintiff alleged a breach of fiduciary duty. *See Cartwright v. Garner*, No. W2016-01424-COA-R3-CV, 2018 WL 4492742, at *1, *9 (Tenn. Ct. App. Sept. 19, 2018); *Cartwright v. Jackson Capital*, No. W2011-00570-COA-R3-CV, 2012 WL 1997803, at *1, *16 (Tenn. Ct. App. June 5, 2012). Appellant initiated the present case under similar

prior to the telephonic hearing on attorneys' fees.

circumstances, by filing a petition that asserted Ms. Gibbs breached her fiduciary duty as trustee.

Having determined that this case involves the "administration of a trust" under section 35-15-1005(a), we also agree with the trial court that justice and equity permit an award of attorneys' fees and expenses for Ms. Gibbs and Cleveland. The purpose of the Trust was to support Ms. Cross during her lifetime. Ms. Gibbs undertook the burden of helping support Ms. Cross while Ms. Pinson lived on the Berryhill property for free. Additionally, Ms. Pinson prosecuted this case over several years despite the terms of the Trust giving Ms. Gibbs the "absolute and unfettered discretion" to act as trustee, which included the authority to sell the property. Despite Ms. Pinson initiating the action, the case went dormant for several years, causing a significant delay for all of the parties involved. Further, the trial court found that the Estate of Barbara Pinson contains substantial funds. The court made this determination by taking judicial notice of the facts contained in its prior order, which were filed at the initial summary judgment stage. Taken together, the trial court did not abuse its discretion in finding justice and equity require awarding attorneys' fees to Ms. Gibbs and Cleveland under section 35-15-1004(a).

In protest to the trial court's award of attorneys' fees, Appellant argues that the holding in *In re Estate of Roseman*, No. M2019-00218-COA-R3-CV, 2019 WL 5078722 (Tenn. Ct. App. Oct. 10, 2019) should control our decision. We disagree. *Roseman* is a memorandum opinion and, therefore, has no precedential value. *See* Ct. App. R. 10; *In re Estate of Roseman*, 2019 WL 5078722, at n.1.

There is sufficient evidence in the record to show that the Estate of Barbara Pinson has sufficient funds to incur Ms. Gibbs and Cleveland's attorneys' fees and expenses. Contrary to Appellant's argument, the trial court did not render a ruling on attorneys' fees prior to it receiving this proof. The court reserved its final ruling on attorneys' fees until it received all of the parties' filings on the matter.

Accordingly, there was sufficient evidence for the trial court to award Ms. Gibbs and Cleveland attorneys' fees and expenses. We affirm the trial court's decision to award Ms. Gibbs $28,115 in attorney's fees and expenses and Cleveland Gibbs $1,950 in attorney's fees. *See* Tenn. Code Ann. § 35-15-1004(a); *In re Estate of Goza*, 397 S.W.3d at 571; *Taylor*, 158 S.W.3d at 359.

## V. CONCLUSION

In light of the foregoing, we affirm the trial court's award of summary judgment to Teresa Gibbs and Cleveland Gibbs. We also affirm the award of attorney's fees. This matter is remanded to the trial court for entry of a judgment consistent with this Opinion. Costs on appeal are taxed to the appellant, Estate of Barbara Pinson, and its surety, for which execution may issue, if necessary.

_____
CARMA DENNIS MCGEE, JUDGE